518 P.2d 566

**STATE of Arizona, Appellee,**

v.

**Danny Lopez PETERS, Appellant.**

**No. 2546.**

Supreme Court of Arizona,
In Banc.

Jan. 24, 1974.

———◆———

Gary K. Nelson, Atty. Gen., Phoenix, by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

Bernard L. Lesser, Tucson, for appellant.

STRUCKMEYER, Justice.

In this criminal case, Danny Lopez Peters was charged with and entered a plea of guilty to the sale of heroin, a narcotic. He was sentenced to five to seven years. The sentence was stayed for thirty days, during which time he was committed to the Pima County Jail in order to complete methadone treatment for addiction to heroin.

■ The defendant presents a number of questions which can be reduced to two, the first being whether defendant's guilty plea was voluntarily and intelligently made in light of the fact that at the time of his plea defendant was under methadone treatment.

The defendant's plea of guilty resulted from a plea bargain. From the transcript of a hearing held February 17, 1972, it appears the assistant prosecuting attorney stated to the court that defendant was pleading guilty to one of three charges and that at the time of sentencing, the State would move to dismiss the other two. The court addressed the defendant personally as to whether he had discussed this plea with his attorney, as to whether he knew he had a right to a public trial, the right to confront witnesses, whether he still wished to enter a plea of guilty; to all of which

the defendant responded "yes." The court also questioned the defendant as to whether any promises or threats had been made in connection with his plea of guilty, and, further, told the defendant of the extent of the possible sentence in the case, advising him that the court had no idea what the sentence would be until the probation officer completed his investigation and reported back to the court.

Thereafter, at a mitigation hearing, just before sentencing, on March 24, 1972, William Calloway, the deputy public defender representing the defendant, stated, in part, to the court:

"I know that Danny has been assisting his mother in the business, has been working in the business and helping her out in the business. In addition to that, he has been attending Lamson's Business College since the first part of February of this year. I have also gone down and spoken to the other people in the program, in the methadone maintenance program. I thought that most of what they would have to say would be repetitive. He has been making satisfactory progress in the methadone maintenance program. *He has reached the level of stabilization in the methadone maintenance program* and the next step in the program would be a detoxification process where he would be detoxified off of methadone." (Emphasis supplied)

One of the latest discussions of the effects of the use of methadone may be found in 46 So.Cal.L.Rev. at 713, The Impact of Methadone Maintenance on Civil and Criminal Liability. There, it is concluded that the methadone patient, unlike the user of other opiates, reaches the point where his need for large dosages diminishes, permitting his maintenance on a near stable dose.

"* * * although physical dependence on methadone is just as severe as on heroin, there are some important qualifications. Heroin euphoria is very debilitating and prohibits normal functioning * * *. In contrast, the methadone addict, *once stabilized,* experiences no (or virtually no) euphoria and needs to take the drug only once a day. He is lucid and capable of normal functioning, * * *." (p. 719) (Emphasis supplied)

After citing to a number of different investigations on the impact of methadone, the article makes this observation:

"The overwhelming impact of these reports is to support the conclusion that once an addict is stabilized, virtually all of his performance falls within the reasonable limits of normal conduct." (pp. 724–725)

And later, after discussing the danger of driving while stabilized on a methadone maintenance program:

"In conclusion, the available evidence indicates that the average stabilized addict suffers *no* debilitating side effects. The small percentage that do experience any effects, experience them in so slight a degree that they present virtually no danger." (p. 728)

Accordingly, we conclude that defendant's plea of guilty was not influenced by his addiction to methadone.

The defendant's second question is directed to the court's sentence which required him to spend thirty days in the Pima County Jail in order to complete the methadone treatment before the commencement of his penitentiary sentence. It is true that a jail sentence is not authorized by law as part of a felony prison sentence, but any question as to the legality of the jail sentence has long been mooted by the passage of time.

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.